UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

IN RE:   JOYCE M. SELLERS,   :   Chapter 13
:
Debtor.   :   Bky. No. 15-14723 ELF
:

# M E M O R A N D U M

## I. INTRODUCTION

In a bench opinion delivered on June 2, 2016, I sustained in part and denied in part the objection to the proof of claim of Nationstar Mortgage, LLC ("Nationstar") filed by Debtor Joyce M. Sellers ("the Debtor"). In that opinion, I held:

(1) the provisions of Pennsylvania's Loan Interest Protection Law, 41 P.S. §§101 et seq. ("Act 6"),[1] apply to the reverse mortgage held by Nationstar;

(2) as a result of Nationstar's failure to comply with the pre-foreclosure notice requirements of Act 6, 41 P.S. §403, the Debtor's objection to certain legal expenses included in Nationstar's proof of claim would be sustained;

(3) the Debtor was not entitled to an award of attorney's fees under 41 P.S. §503(a); and

(4) insofar as the Debtor's chapter 13 plan provides for a cure of the Debtor's prepetition default under her mortgage and, as a result of the ruling, the court determined the amount of Nationstar's claim for prepetition arrears, it was unnecessary to determine the amount of Nationstar's total allowed secured claim.

Presently before the court is the Debtor's Motion for Reconsideration of the denial of the request for an award of attorney's fees under 41 P.S. §503 and the court's decision not to determine the amount of Nationstar's total allowed secured claim ("the Motion").

---

[1] The statute was enacted as Act 6 of 1974, P.L 13, No. 6. Practitioners commonly refer to the statute commonly by its session law name.

-1-

For the reasons set forth below, the Motion will be denied.

## II.  BACKGROUND

On July 2, 2015, Debtor Joyce M. Sellers ("the Debtor") filed a voluntary chapter 13 bankruptcy petition.  Debtor filed her chapter 13 plan and schedules on July 28, 2015.  (Doc. #'s 17, 19).

The Debtor's chapter 13 plan ("the Plan") proposed to cure the Debtor's prepetition arrears and maintain the monthly mortgage payments on Nationstar's secured claim.  The Plan estimated the arrears claim to be approximately $3,000.00.  Nationstar eventually filed an amended proof listing a cure amount of $13,003.04.

On February 26, 2016, the Debtor filed an objection to Nationstar's amended proof of claim ("the Objection").  (Doc. #40).  A hearing on the Objection was held and concluded on March 22, 2016.  The parties submitted memoranda in support of their positions, the last of which was filed on April 29, 2016.

The court issued an oral decision on the merits of the Objection on June 2, 2016.  The Debtor was largely successful in challenging the cure amount in Nationstar's proof of claim.  The proof of claim for arrears was allowed in the amount of $4,811.44.  The oral ruling was memorialized by a written order, docketed the same day ("the Order").  (Doc. # 56).

Two (2) aspects of the ruling on the Objection are relevant to the pending Motion.

First, although I sustained the Debtor's objection to $2,653.73 in attorney's fees and costs that were assessed in connection with a prepetition state court foreclosure action due to noncompliance with Act 6, 41 P.S. §403, I denied the Debtor's request for attorney's fees under

41 P.S. §503. I based this ruling on the Pennsylvania Superior Court decision in <u>Generation Mortgage Co. v. Nguyen</u>, 2016 WL 1404215, at *5 (Pa. Super. Ct. Apr. 11, 2016).

Second, the Debtor requested that I fix the total allowed secured claim of Nationstar. I denied this request, limiting my ruling to a determination of the amount of prepetition arrears.

On June 16, 2016, the Debtor filed the Motion, seeking reconsideration of the Order. (Doc. # 59). The parties waived argument on the Motion, relying instead on their written submissions. Briefing on the Motion was complete on July 12, 2016.

### III. LEGAL STANDARDS - MOTION FOR RECONSIDERATION

Federal Rule 59(e), made applicable to this proceeding by Bankruptcy Rule 9023, allows a judgment to be altered or amended only if the moving party shows at least one (1) of the following grounds:

(1) an intervening change in the controlling law;

(2) the availability of new evidence that was not available when the court granted the motion; or

(3) the need to correct a clear error of law or fact or to prevent manifest injustice.

<u>Blystone v. Horn</u>, 664 F.3d 397, 415 (3d Cir. 2011) (emphasis removed); <u>accord</u> <u>Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros</u>, 176 F.3d 669, 677 (3d Cir. 1999); <u>Intermec Tech. Corp. v. Palm, Inc.</u>, 2011 WL 6356619, at *2 (D. Del. Dec. 19, 2011) (citing <u>Max's Seafood</u>).

The movant must overcome a high burden in meeting this standard. <u>ABS Brokerage Servs., LLC v. Penson Fin. Servs., Inc.</u>, 2010 WL 3257992, at *5 (D.N.J. Aug. 16, 2010); <u>see also</u> <u>Blystone</u>, 664 F.3d at 415 ("the scope of a motion for reconsideration . . . is extremely

limited"); Fanelli v. Continental Cas. Co., 2006 WL 3387187, at *2 (M.D. Pa. Nov. 21, 2006) ("reconsideration of judgment is an extraordinary remedy, and such motions should be granted sparingly") (citation omitted).

Further, a Rule 59(e) motion is not a vehicle to relitigate matters that have already been considered by the court. In re Scotto-DiClemente, 463 B.R. 308, 310 (Bankr. D.N.J. 2012) ("[a] motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant" (quoting Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002)); Conway v. A.I. duPont Hosp. for Children, 2009 WL 1492178, at *2 (E.D. Pa. May 26, 2009) ("Parties may not use rule 59(e) motions as a vehicle to ask . . . Courts to rethink what they have already thought through- rightly or wrongly.") (internal citations and quotations omitted).

## IV. THE DENIAL OF DEBTOR'S REQUEST FOR ATTORNEY'S FEES UNDER ACT 6, 41 P.S. §503(a)

The main thrust of the Motion is that I committed an error of law in interpreting Act 6, 41 P.S. § 503(a) with respect to her request for attorneys fees – an issue yet to be ruled on by the Pennsylvania Supreme Court. In this case, after determining that Nationstar failed to comply with the pre-foreclosure notice requirements of Act 6, 41 P.S. §403, and awarding the Debtor relief by sustaining, in part, her objection to Nationstar's proof of claim, I denied her request for attorney's fees under 41 P.S. §503. In doing so, I relied upon and followed Nguyen, a recent decision of the Pennsylvania Superior Court.

In the absence of controlling state court precedent, I must predict how the Pennsylvania

Supreme Court would resolve the issue by examining the decisional law of the Pennsylvania intermediate courts and decisions of federal courts and other jurisdictions that discuss the issue. See, e.g., Klein v. Weidner, 729 F.3d 280, 283 (3d Cir. 2013) (citing Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1373 n.15 (3d Cir. 1996)).

Based on existing Pennsylvania appellate case law, the Debtor argues that Nguyen was decided incorrectly and that I committed a clear error of law in following that decision. I disagree.

**A.**

**1.**

Nguyen originated as a mortgage foreclosure action against the debtor/homeowner in the Court of Common Pleas ("the CP Court"). As one of her defenses, Nguyen pled that the action was filed in violation of Act 6.[2] After the CP Court denied motions for summary judgment, the

---

[2]    Act 6 is a "comprehensive interest and usury law with numerous functions, one of which is that it offers homeowners with residential mortgages a measure of protection from overly zealous residential mortgage lenders." Benner v. Bank of Am., N.A., 917 F. Supp. 2d 338, 357 (E.D. Pa. 2013) (citing In re Graboyes, 223 Fed. App'x. 112, 114 (3d Cir. 2007)) (internal quotation marks omitted).

The protective provisions of Act 6 set strict notice requirements that must be sent to a homeowner prior to the institution of mortgage foreclosure proceeding. See 41 P.S. §403. Failure to comply with these requirements can result in the striking of a foreclosure judgment or the denial of the creditor's claim for impermissible fees. See Wells Fargo Bank N.A. v. Spivak, 104 A.3d 7, 12 (Pa. Super. Ct. 2014) (citations omitted).

Act 6 also limits the amount of attorney's fees and costs that a "residential mortgage lender shall contract for or receive . . . from a residential mortgage debtor." 41 P.S. §406. As a remedy, section 502 permits the recovery of treble damages "in a suit at law against the person who has collected such excess interest or charges." 41 P.S. §502.

Further, if a "borrower or debtor . . . prevails **in an action arising under** [Act 6], he
(continued...)

plaintiff, Generation Mortgage, filed a praecipe to discontinue and end the matter without prejudice. Nguyen then filed a motion for counsel fees under 41 P.S. §503, arguing that she was the prevailing party because of the discontinuance and she was entitled to attorney's fees. The CP Court denied the motion and Nguyen appealed.[3]

On appeal, Nguyen argued that she was entitled to fees because Generation Mortgage did not send the proper notice under Act 6. Nguyen asserted that 41 P.S. §503 gives her a cause of action because she was adversely affected by a violation of the Act. Thus, according to Nguyen, she was the prevailing party because she achieved the result she sought in the litigation – its dismissal – and, as the prevailing party, she was entitled to attorney's fees under 41 P.S. §503.

The Superior Court observed initially that a homeowner's assertion that a lender's failure to comply with the pre-foreclosure notice requirements of Act 6 is usually raised as a defense in a mortgage foreclosure action instituted by the mortgagee. See 2016 WL 1404215, at *4. The defense, if successful, permits the homeowner to defeat a creditor's claim for foreclosure against

---

[2](...continued)
shall recover" reasonable costs, expenses, and attorney's fees in connection with the prosecution of such action. 41 P.S. §503 (emphasis added).

    Section 504 provides an individual with a private right of action for damages:

> Any person affected by a violation of the act shall have the substantive right to bring an action on behalf of himself individually for damages by reason of such conduct or violation, together with costs including reasonable attorney's fees and such other relief to which such person may be entitled under law.

41 P.S. §504.

[3] The CP Court did not determine whether Generation Mortgage violated the notice provisions of Act 6 before the foreclosure action was discontinued.

the residential real estate or collection of an impermissible fee. Id. (citing Spivak, 104 A.3d at 12). The court then concluded that Nguyen was not entitled to counsel fees.

The Nguyen court reasoned that, even if Nguyen were considered to have prevailed based on the plaintiff's discontinuance of the action, her success occurred in a mortgage foreclosure action, which "is separate from" and "does not arise under" Act 6. 2016 WL 1404215, at *5. Nguyen instructs that in order to invoke 41 P.S. §503, a mortgagor must present an affirmative claim under Act 6 rather than using the statutory rights afforded to defeat an adversary's claim for relief arising under some other source of law.[4]

Nguyen is a decision explicitly grounded in the plain language of the 41 P.S. §503, specifically, the phrase "prevails in an action arising under [Act 6]." I find the Nguyen court's reasoning persuasive and I predict that the Pennsylvania Supreme Court would reach the same result if presented with the issue.

**2.**

The procedural posture in this contested matter is analogous to that in Nguyen. By filing her objection to Nationstar's proof of claim, the Debtor raised Act 6 as a defense to the allowance of the claim. I disallowed the attorney's fees and costs component of Nationstar's claim because the Debtor successfully established a violation of Act 6's pre-foreclosure notice

---

[4] It is only where a mortgagor successfully establishes damages in a 41 P.S. §504 action that a mortgagor is entitled to recover attorney's fees. See Hammill v. Bank of Am., N.A., 569 Fed. App'x. 133 (3d Cir. 2014); Benner, 917 F. Supp. 2d at 358-59; see generally In re Smith, 866 F.2d 576 (3d Cir. 1989) (failure to give pre-foreclosure notice under Act 6 gives rise to an action for damages under 41 P.S. §504).

requirement. But, the Debtor did not bring an affirmative action under Act 6. She responded to the filing of a proof of claim and merely raised a defense to the allowance of the claim in bankruptcy. Thus, under Nguyen, the Debtor was not entitled to attorney's fees under 41 P.S. §503.

**B.**

In arguing that Nguyen was incorrectly decided and not a reliable indication how the Pennsylvania Supreme Court would rule, the Debtor cites three (3) distinct lines of Pennsylvania precedent. As explained below, the cited cases are distinguishable, inapposite or the Debtor overstates the scope of their holdings. As a result, I reiterate my prediction that, if presented with the question, the Pennsylvania Supreme Court would adopt the holding in Nguyen.

**1.**

The Debtor first contends that the decision in Nguyen is inconsistent with the Pennsylvania Superior Court's own precedents – Gardner v. Clark, 503 A.2d 8 (Pa. Super. Ct. 1986) and Drum v. Leta, 512 A.2d 36 (Pa. Super. Ct. 1986). She cites the Gardner line of cases for the proposition that the Superior Court has consistently held that "debtors were entitled to fees under §503 for successfully defending actions instituted in violation of Act 6." (Debtor's Memorandum at 2 n.2). Like the Nguyen court, I find these decisions distinguishable.

Each of these cases involve a homeowner who resisted the enforcement of a confessed judgment entered and prevailed because the protective provisions of Act 6 provided the homeowner with a defense. The Debtor is correct that in each of these cases, the court found that

the successful homeowner was entitled to an award of attorney's fees.

However, the Debtor overlooks that Act 6 includes a separate fee-shifting provision, 41 P.S. §407(b), related to proceedings involving confessed judgments, which was the subject matter of the cited cases.

41 P.S. §407(b) provides:

> Any debtor who prevails **in any action to remove, suspend or enforce a judgment entered by confession** shall be entitled to recover reasonable attorney's fees and costs as determined by the court.

(emphasis added).

The text of 41 P.S. §503(a) differs materially from that of 41 P.S. §503(a).

Section 503(a) refers only to a debtor who prevails "in an action arising under [Act 6]." The phrase "action arising under" Act 6 connotes an affirmative lawsuit by the homeowner to enforce his or her statutory rights. As the Nguyen court recognized, an action in mortgage foreclosure does not "arise under" Act 6. It is an action at law to enforce an interest in property. See, e.g., Standard Pa. Practice 2d §121:30 (West 2016).

By comparison, §407(b) is more expansive than 41 P.S. §503(a). Section 407(b) refers to "any action" in which a plaintiff seeks "to enforce" a confessed judgment. The language in §407(b) is broad enough to include proceedings initiated by a creditor in which the homeowner is acting defensively.

That said, I acknowledge that Gardner cited both §407(b) and §503(a) in support of its holding and the Drum court read Gardner as "not[ing]" that the statue provides for an award "under both section 407(b) and, 41 P.S. § 503." 512 A.2d at 38.

If §503(a), independently of §407(b), supports an award of counsel fees for a successful

-9-

defense against enforcement of a confessed judgment based on the protective provision of Act 6, logic dictates that §503(a) also authorizes an award of attorney's fees for asserting a successful Act 6 defense in an action in mortgage foreclosure. However, neither the enforcement of a confessed judgment nor an action in mortgage foreclosure "arises under" Act 6 under any plain reading of the statute. While the Gardner line of cases provides some authority for the Debtor's position, I remain unpersuaded.

Both Gardner and Drum involved confessions of judgment, not actions in mortgage foreclosure. In such cases §407(b), by itself, provides ample authority for the award of attorney's fees to the prevailing defendant. In this respect, the references in Gardner and Drum to §503(a) may be characterized as dicta. Regardless, neither case parses the statutory language to explain why §503(a) provides an additional statutory basis for fee-shifting when the subject matter is plainly and comprehensively covered in §407(b).

Nguyen is the first decision to analyze the issue head-on, i.e., whether the assertion of a successful Act 6 defense to an action not initiated by the fee applicant under Act 6 gives rise to a right to attorney's fees under §503(a). Thus, it is an overstatement to characterize Nguyen as being in direct conflict with the earlier decisions. To the extent that there is some tension between Gardner/Drum and Nguyen, I find Nguyen to be the better reasoned decision and more likely to be adopted by the Pennsylvania Supreme Court.[5]

---

[5] The Debtor also cited a third case in the Gardner line, Beckett v. Laux, 577 A.2d 1341 (Pa. Super. Ct. 1990). Beckett, too, involved a homeowner's successful Act 6 defense in a proceeding to enforce a confessed judgment and held that the prevailing homeowner was entitled to an award of attorney's fees. Interestingly, the Beckett court cited only §503(a), without even mentioning §407(b). However, the court provided no explanation why it chose one (1) statutory provision over the other and therefore, is not a compelling precedent.

**2.**

Next, the Debtor contends that Nguyen was incorrectly decided because the court failed to consider relevant Pennsylvania Supreme Court precedent.

Specifically, the Debtor cites three (3) cases for the proposition that the fee shifting provisions of 41 P.S. §503 were incorporated into the Note and Mortgage by operation of law: First Nat'l Bank v. Flanagan, 528 A.2d 134 (Pa. 1987), DePaul v. Kauffman, 272 A.2d 500 (Pa. 1971); and Beaver County Building and Loan Ass'n. v. Winowich, 187 A. 481 (Pa. 1936). Presumably, the Debtor contends that this asserted incorporation makes every action in mortgage foreclosure (involving a mortgage that is subject to Act 6)[6] filed by a creditor, and the defenses raised thereto, an action "arising under" Act 6 for the purposes of 41 P.S. §503(a).

Again, I am unpersuaded. The Debtor reads far too much into these decisions; they do not stand for the far-reaching legal principle espoused by the Debtor.

Flanagan involved a transaction that fell outside the definition of "residential mortgage" in 41 P.S. §101 on the date of its consummation. This made it unnecessary for the lender to give the Flanagans certain loan disclosures otherwise mandated by Act 6. Subsequently, the Pennsylvania Legislature amended 41 P.S. §101 in a manner that would encompass the Flanagan transaction and sought to make the expanded definition retroactive. In a subsequent collection action, Flanagan disputed his liability to his lender based on the absence of the statutory

---

[6] Only certain residential mortgages are subject to the provisions of Act 6. See 41 P.S. §101 (definition of "residential mortgage"); Murphy v. Bank of Am., N.A., 2016 WL 1020969, at *5 (E.D. Pa. Mar. 14, 2016) (declining to apply protective provisions of Act 6 to a mortgage that fell outside the statutory definition of "residential mortgage").

disclosures.

In Flanagan, the Pennsylvania Supreme Court held, as a matter of state and federal constitutional law, that the amendment requiring that the lender provide certain disclosures at the time of the transaction could not be applied retroactively: "A later law cannot abridge rights under a prior contract." 528 A.2d at 137. In the course of its opinion, the Flanagan court also stated in passing: "The only substantive laws in effect when the parties enter into a contract are implicitly incorporated into it." Id. The Debtor looks for support in this sentence.

Respectfully, the sentence in the Flanagan opinion relied upon by the Debtor is inartful. Considering its context, the court probably meant to say *the substantive laws in effect when the parties enter into a contract are the only laws implicitly incorporated into it, not later enacted laws*. In any event, the Debtor seizes upon and quotes the single sentence quoted in the preceding paragraph – omitting the qualifier "only" in her Memorandum – in support of her argument that the fee-shifting provision was incorporated into their parties' contract in this case. When the word "only" is deleted, the sentence reads (and is quoted by the Debtor as): "[the] substantive laws in effect when the parties enter into a contract are implicitly incorporated into it." (Debtor's Memorandum at 3). This indisputably conveys a different point than the one being made by the Flanagan court.

The Debtor's argument is about as weak as an argument can be. The Debtor modified the quote from Flanagan in a manner that changed its meaning and presented it entirely out of context. Flanagan was a case about the degree to which statutory provisions involving the regulation of contracts and the procedures for enforcing contracts can be enacted with a

retroactive effect.[7] It was not a case about the degree to which contracts automatically incorporate substantive statutory remedies contained in a general regulatory statute.

Nor are either of the two (2) other cases cited by the Debtor on point.

The issue in DePaul was whether the Pennsylvania Rent Withholding Act, 35 P.S. §1700-1 was a constitutional exercise of the Commonwealth of Pennsylvania's police power. The court rejected the argument that the statute unconstitutionally impaired the obligation of contracts. In doing so, the court reasoned that a statute enacted prior to the formation of a contract "become[s] part of the obligation of the . . . contract." 272 A.2d at 506.

Again, from the context, it is obvious that the court did not mean those words to be taken literally. The court meant only that a statute may be applied to regulate the behavior of parties occurring after the statute's enactment is a valid legislative act and may thereby affect the enforceability of contract provisions.[8] The relevant legal principle stated in DePaul is only that the state may exercise its police power to regulate the substantive terms of contracts entered into by its citizens. The case does not mean that every remedy in the regulatory statute is automatically incorporated into the parties' contract despite statutory text limiting the scope of the remedy.

---

[7] While the court in Flanagan held that the requirement that certain disclosures be made at the time of the formation of a contract could not be imposed on the lender retroactively, the court also observed that the statutorily mandated notice procedures preceding the judicial enforcement of contracts may be imposed and apply to contracts entered into before the enactment of the procedures. 528 A.2d at 138 (citing Ministers and Missionaries Benefit Bd. v. Goldsworthy, 385 A.2d 358 (Pa. Super. Ct. 1978)).

[8] The DePaul court also held that the Rent Withholding Act could be applied to contracts entered into prior to its enactment, reasoning that the constitution permits legislation that delays the enforcement of, but does not permanently eliminate, contractual rights. See 272 A.2d at 506-07.

Winowich, similarly is not on point.  Winowich, too, involved the retroactive application of a regulatory statute, the Pennsylvania Mortgage Deficiency Judgment Act (then codified at 21 P.S. §806).  As in the current version of the statute, see 42 Pa. C.S. §8103, the statute imposed the requirement that a creditor who has executed on a judgment against the judgment debtor's real property who wishes to collect any alleged remaining deficiency must file a petition with the court within a limited time period requesting that the court  fix the fair value of the property sold.  In Winowich, the court held the statute unconstitutional insofar as it was applied to contracts existing on the date of its enactment.  Like DePaul, Winowich is a case about the constitutionality of the retroactive application of regulatory statutes.  While the Winowich court stated that "the laws which were in force at the time and place of the making of the contract enter into its obligation . . . as if expressly incorporated therein," 187 A. at 484, that statement focused on the retroactivity issue, not the degree to which particular statutory remedies are incorporated into the parties' contract.  Further, the vitality of Winowich as precedent is diminished by the fact that it was overruled just five (5) years after it was decided.  See Fidelity-Philadelphia Trust Co. v. Allen, 22 A.2d 896 (Pa. 1941) (citing Gelfert v. National City Bank of New York, 313 U.S. 221 (1941)); see also Pennsylvania Co. for Ins. on Lives and Granting Annuities v. Scott, 29 A.2d 328 (Pa. 1942).

In short, the cases cited by the Debtor do not demonstrate that Nguyen was decided incorrectly.

**3.**

Finally, the Debtor argues that a recent Pennsylvania Supreme Court case, Glover v.

-14-

Udren Law Offices, 2016 WL 3388528 (Pa. June 20, 2016), supports her contention that Nguyen was decided incorrectly and that she is entitled to attorney's fees under 41 P.S. §503(a).

Glover was a class action brought against a law firm that represents mortgage lenders in mortgage foreclosure actions. Glover claimed that Udren Law Offices collected excessive and unearned fees and costs in excess of those authorized by 41 P.S. §406. Thus, she asserted a claim for treble damages under 41 P.S. §502[9] for the alleged excessive fees and costs.

The trial court and the Pennsylvania Superior Court held that 41 P.S. §502 regulated the behavior of only "residential mortgage lenders," not its counsel, and therefore, it did not provide the homeowner with a remedy against the law firm representing the mortgage lender.

The Pennsylvania Supreme Court reversed. The court initially focused on the text of §502, pointing out that it states that any "person" who collects excessive charges is liable and that the term "person" is defined in Act 6 as "includ[ing] *but not . . . limited* to residential mortgage lenders." Glover, 2016 WL 3388528, at *4 (emphasis in original) (citing 41 P.S. §101). The court concluded that the plain language of §502, as well as the overall, broad remedial purposes of Act 6 in general, supported its holding that an attorney representing a residential mortgage lender who collects an excessive fee or charge may be held liable under §502. 2016 WL 3388528, at *4.

---

[9]    41 P.S. §502 provides, in pertinent part:

> A person who has paid a rate of interest for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law **may recover** triple the amount of such excess interest or charges in a suit at law **against the person who has collected such excess interest or charges** . . . .

(emphasis added).

Glover does not aid the Debtor because it is not inconsistent with Nguyen. Glover involved the construction of 41 P.S. §502, not §503. Its holding is grounded primarily in the application of the plain meaning of the statutory text of §502, just as the Nguyen court based its holding on the plain meaning of 41 P.S. §503, a different section of the statute with different language.

I am unpersuaded by the Debtor's implicit argument that Glover instructs that the broad, remedial purposes of Act 6 – a statute "designed to avoid mortgage foreclosures"[10] – requires an interpretation of 41 P.S. §503(a) that conflicts with plain language of the statutory text.

As drafted, 41 P.S. §503(a) does not vitiate the other consumer protective provisions of Act 6 or so interfere with the overall purposes of the statute as to compel the conclusion that the Legislature must have intended a meaning contrary to the words it employed in 41 P.S. §503(a). It may be desirable, and good policy, to provide for fee-shifting any time a homeowner invokes successfully the consumer protective provisions of Act 6, but fee-shifting is not absolutely essential to the functioning of the statute. The protective provisions are in place and are available to homeowners even without fee-shifting.

If the Pennsylvania Legislature had intended to provide for fee-shifting when Act 6 was raised successfully as a defense in a mortgage foreclosure action, it easily could have expressed that intent, by drafting 41 P.S. §503(a) in a different manner.[11] It chose not to do so and the

---

[10]    Bennett v. Seave, 554 A.2d 886, 891 (Pa. 1989).

[11]    For example, §503(a) could have been drafted to say:

(continued...)

courts must honor that intent as expressed in the plain language of the statute. Policy considerations alone do not trump the plain language of a statue. <u>See</u> Pennsylvania Statutory Construction Act, 1 Pa. C.S. §1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit"); <u>accord</u> <u>Ario v. Ingram Micro, Inc.</u>, 965 A.2d 1194, 1201 (Pa. 2009) ("When the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute").

Consequently, my conclusion that <u>Nguyen</u> was decided correctly is supported by accepted principles of statutory construction.

**4.**

For all of these reasons, I predict that the Supreme Court will follow <u>Nguyen</u> and hold that 41 P.S. §503(a) may be invoked only when a mortgagor/debtor brings an affirmative action under Act 6. Therefore, the Debtor's request that I reconsider my ruling denying her request for counsel fees will be denied.

## V. DETERMINATION OF THE TOTAL ALLOWED SECURED CLAIM

The Debtor seeks reconsideration of the denial of her request that the court determine the total amount of Nationstar's allowed secured claim. The Debtor argues that under 11 U.S.C.

---

[11](...continued)
> If a borrower or debtor, including but not limited to a residential mortgage debtor, prevails in an action arising under this act **or in an action to enforce a residential mortgage based upon a violation of this act**, he shall recover the aggregate amount of costs and expenses determined by the court to have been reasonably incurred on his behalf in connection with the prosecution of such action, together with a reasonable amount for attorney's fee

§502(a), a proof of claim is deemed allowed unless a party in interest objects. The Debtor contends that she objected to the full amount of the secured claim and therefore, the court must determine the amount of the allowed secured claim. See 11 U.S.C. §502(b).

The Debtor posits that disallowing the fees and costs from the arrears claim, while allowing the same fees and costs to pass through the bankruptcy case unaffected as part of the total debt claim, results in a factually inconsistent determination. In response, Nationstar argues the court correctly denied the Debtor's request to fix and determine the full amount of the claim as premature or an improper advisory opinion. I agree with Nationstar.

As mentioned in Part II above, the Debtor's Plan is a "cure and maintenance of payments plan." See 11 U.S.C. §1322(b)(5). Through the Plan, the Debtor seeks to cure the prepetition arrears with the plan payments made to the chapter 13 trustee while paying the monthly mortgage payments under the note and mortgage as they fall due postpetition. The Plan does not provide for payment of the total secured claim.

A claim for prepetition mortgage arrears is a separate claim from a mortgagee's total secured claim. See Rake v. Wade, 508 U.S. 464, 473 (1993). Because the Plan provides only for the payment of the arrears, that is the only issue requiring adjudication.

In no sense is there any live dispute between the parties regarding the total amount of the mortgage debt. Nationstar is stayed from demanding payment of the entire debt in any other forum, see 11 U.S.C. §362(a). The Debtor is not proposing, and Nationstar is not seeking, payment in full in this bankruptcy case. In light of my ruling disallowing certain amounts of Nationstar's arrearage claim, the parties may or may not presently agree on the current unpaid balance of the entire mortgage debt. There is no way to know for sure. But either way, there is

no "actual dispute between adverse litigants"[12] that will have any effect on this bankruptcy case.

In light of these facts, the court lacks subject matter jurisdiction to determine the total allowed secured claim for two (2) related reasons.

First, a determination of Nationstar's entire claim would be an advisory opinion. See Coffin v. Malvern Fed. Sav. Bank, 90 F.3d 851, 853-54 (3d Cir. 1996); In re Patwari, 2016 WL 3443894, at *3-4 (Bankr. D.N.J. June 10, 2016).

Second, the determination will have no effect on the administration of this bankruptcy case. Compare In re Universal Mktg., 459 B.R. 573, 579 (Bankr. E.D. Pa. 2011) ("a matter must at least be related to the bankruptcy for the bankruptcy court to exercise any type of subject matter jurisdiction"), with In re Shuman, 277 B.R. 638, 647 (Bankr. E.D. Pa. 2001) ("Typically, litigation which is related to a bankruptcy case is litigation which will affect in some manner the property to be administered by the bankruptcy trustee or the amount or priority of claims to be repaid.").

Consequently, the Debtor's request for reconsideration of the decision not to determine the allowed amount of Nationstar's entire claim will be denied.

---

[12]    In re Smith, 409 B.R. 1, 3 & n.2 (Bankr. D.N.H. 2009).

## VI.  CONCLUSION

For the reasons stated above, the Debtor's Motion for Reconsideration of the June 2, 2016 Order will be denied.  An appropriate order will be entered.

**Date: August 3, 2016**

							  **ERIC L. FRANK**
							  **CHIEF U.S. BANKRUPTCY JUDGE**